## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **LERON S. BURGE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Civil Action File No. |
| **vs.** | : | |
| | : | |
| **EDUCATION** | : | |
| **MANAGEMENT** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant** | | |

---

### COMPLAINT

---

Plaintiff Leron S. Burge ("Burge") brings this Complaint against Defendant Education Management Corporation ("Education Management") and shows the Court as follows:

### INTRODUCTION

1.

This is a wage and hour case that is brought because Education Management failed to compensate Burge at one-and-one half times his regular rate for work that Burge performed over forty (40) hours each work week of his employment, as required by the Maximum Hours provision of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 207.

**JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Education Management is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

4.

Burge resides in DeKalb County, Georgia.

5.

Education Management is a domestic for-profit corporation organized under the laws of the State of Georgia.

6.

Education Management is subject to the personal jurisdiction of this Court.

7.

Education Management may be served with process through its registered agent, Mel Cohen, at 8725 Dunwoody Place, Suite 2, Sandy Springs, Georgia 30350.

8.

At all times during the Relevant Time Period (*i.e.,* November 17, 2013 through August 22, 2016), Burge was an "employee" of Education Management as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

9.

At all times during the Relevant Time Period, Education Management was an "employer" of Burge as defined in FLSA § 3(d), 29 U.S.C. §203(d).

INDIVIDUAL COVERAGE:

10.

At all times during the Relevant Time Period, Burge was "engaged in commerce" as an employee of Education Management as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

ENTERPRISE COVERAGE:

11.

At all times during the Relevant Time Period, two or more employees of Education Management, including Burge, used or handled the following items that moved in interstate commerce that are necessary for performing its commercial

purpose: computers, paper, office furniture, residential furniture, and office supplies.

12.

At all times during the Relevant Time Period, Education Management was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

13.

During 2013, Education Management had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

14.

During 2014, Education Management had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

15.

During 2015, Education Management had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

16.

During 2016, Education Management had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

17.

During 2013, Education Management had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

18.

During 2014, Education Management had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

19.

During 2015, Education Management had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

20.

During 2016, Education Management had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

21.

During 2013, Education Management had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

22.

During 2014, Education Management had an annual gross volume of sales
made or business done of not less than $500,000 (exclusive of excise taxes at the
retail level that are separately stated) within the meaning of 29 U.S.C. §
203(s)(1)(A).

23.

During 2015, Education Management had an annual gross volume of sales
made or business done of not less than $500,000 (exclusive of excise taxes at the
retail level that are separately stated) within the meaning of 29 U.S.C. §
203(s)(1)(A).

24.

During 2016, Education Management had an annual gross volume of sales
made or business done of not less than $500,000 (exclusive of excise taxes at the
retail level that are separately stated) within the meaning of 29 U.S.C. §
203(s)(1)(A).

25.

At all times during the Relevant Time Period, Education Management was an
"enterprise engaged in commerce or in the production of goods for commerce" as
defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**WHITE COLLAR EXEMPTIONS**

26.

Education Management employed Burge as a residence life coordinator from January 30, 2012 through August 22, 2016.

27.

At all times during the Relevant Time Period, Burge was not exempt from the maximum hour requirements of the FLSA by reason of any legal exemption.

28.

At all times during the Relevant Time Period, Education Management did not employ Burge in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

29.

At all times during the Relevant Time Period, Education Management did not employ Burge in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

30.

At all times during the Relevant Time Period, Burge's primary duties included data entry; managing Bank of America purchase card utilized by all departments; accounts payable; communicating with residents via telephone and email; addressing student concerns; conducting open-houses; conducting housing tours;

coordinating with paraprofessional staff and other departments as needed; and other tasks as assigned.

31.

At all times during the Relevant Time Period, Burge did not exercise independent judgment and discretion in making significant business decisions on behalf of Education Management.

32.

At all times during the Relevant Time Period, Education Management did not employ Burge in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

33.

At all times during the Relevant Time Period, Burge did not supervise two or more employees.

34.

At all times during the Relevant Time Period, Education Management did not employ Burge in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

35.

At all times during the Relevant Time Period, Burge regularly worked more than forty (40) hours per workweek.

36.

At all times during the Relevant Time Period, Burge worked every Monday through Friday from 9:00 a.m. until 6:00 p.m.

37.

At all times during the Relevant Time Period, Burge worked one weekend per month for approximately five (5) hours.

38.

At all times during the Relevant Time Period, Education Management compensated Burge for his work through the payment of an hourly wage.

39.

At all times during the Relevant Time Period, Education Management compensated Burge for his work through the payment of $14.42 per hour.

40.

At all times during the Relevant Time Period, Burge was not genuinely salaried.

41.

At all times during the Relevant Time Period, Education Management did not afford Burge a period during each work day that was free from all duty for the purpose of taking a meal.

42.

At all times during the Relevant Time Period, Education Management required Burge to document his work time by clocking-in at the beginning of a work shift and clocking-out at the end of a work shift.

43.

At all times during the Relevant Time Period, Education Management instructed Burge both verbally and via email to record no more than forty (40) hours worked in a work week, regardless of the actual number of hours that he worked.

44.

Education Management instructed Burge to record no more than forty (40) hours worked in a work week in order to avoid the requirement to pay an overtime premium as set forth in the FLSA's Maximum Hours provision, 29 U.S.C. 207.

45.

At all times during the Relevant Time Period, Burge regularly worked "off the clock" in order to avoid recording more than forty (40) hours in a work week.

46.

At all times during the Relevant Time Period, Education Management was aware that Burge regularly worked off the clock.

47.

At all times during the Relevant Time Period, Education Management failed to compensate Burge for any of the work he performed off the clock during each work week.

48.

At all times during the Relevant Time Period, Education Management promised Burge that it would provide him compensatory time off in lieu of overtime compensation.

49.

Although Burge frequently worked uncompensated time in excess of forty (40) hours in a week, Education Management failed to provide him compensatory time off in lieu of overtime compensation.

50.

At all times during the Relevant Time Period, Education Management failed to create, maintain and preserve accurate records of Burge's hours worked.

51.

In or about December 2015, Burge filed a complaint with Education Management's Human Resources Department in which he complained of the

Company's failure to pay overtime and failure to provide compensatory time off in lieu of overtime.

### 52.

At all times during the Relevant Time Period, Burge regularly worked in excess of forty (40) hours during most work weeks.

## COUNT I - FAILURE TO PAY OVERTIME

### 53.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 54.

At all times during the Relevant Time Period, Burge was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

### 55.

At all times during the Relevant Time Period, Burge regularly worked in Education Management's employ in excess of forty (40) hours per work week.

### 56.

At all times during the Relevant Time Period, Education Management failed to pay Burge at one and one half times his regular rate for work in excess of forty (40) hours in any work week.

57.

Education Management willfully failed to pay Burge at one and one half times his regular rate for work in excess of forty (40) hours in any week from November 17, 2013 through August 22, 2016.

58.

Because of Education Management's failure to pay overtime, Burge is entitled to recover such overtime payment in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

59.

As a result of the underpayment of overtime compensation as alleged above, Burge is also entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

60.

As a result of the underpayment of overtime compensation as alleged above, Burge is also entitled to his litigation costs, including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully prays:

1. That Plaintiff be awarded due but unpaid overtime compensation in an amount to be determined at trial against Education Management;

2. That Plaintiff be awarded liquidated damages in an amount equivalent to his due but unpaid overtime compensation against Education Management:

3. That Plaintiff be awarded his costs of litigation, including his reasonable

   attorneys' fees from Education Management; and

4. For such other and further relief as the Court deems just and proper.


   Respectfully submitted,


                                        DELONG CALDWELL BRIDGERS
                                        FITZPATRICK & BENJAMIN, LLC

3100 CENTENNIAL TOWER                   /s/CHARLES R. BRIDGERS
101 MARIETTA STREET                     CHARLES R. BRIDGERS
ATLANTA, GEORGIA 30303                  GA. BAR NO. 080791
(404) 979-3171
(404) 979-3170 (f)                      /s/ KEVIN D. FITZPATRICK, JR.
kevin.fitzpatrick@dcbflegal.com         KEVIN D. FITZPATRICK, JR.
charlesbridgers@dcbflegal.com           GA. BAR NO. 262375

                                        COUNSEL FOR PLAINTIFF